Cabell, P.
I am of opinion, that by the agreement of the 11th of August 1882, between the members of the family of George Pickett deceased, and by the deed of the 4th of March 1833, between the executors and devisees of the said George Pickett deceased, of the one c ' part, and Thomas Green of the other part, reciting and consurnmating that agreement, seventeen undivided twenty-fourth parts of what is called, in the said deed and agreement, the mansion house property, were dedicated to the satisfaction of 8500 dollars, part of a legacy of 12,000 dollars, which had been bequeathed by the said George Pickett deceased, to his daughter Margaret Pickett, and which, afterwards, but before the marriage of the said Margaret with the said John Heth, was, by an indenture made the 14th day of May in the year 1822, between the said Margaret Pickett of the first part, the said John Heth of the second part, and George C. Pickett, then of the City of Richmond, of the third part, duly conveyed to the said George C. Pickett, in trust, for certain uses and trusts in the said deed expressed and declared, as by the said deed recorded in the Court of Hustings of the City of Richmond, and made a part of the record in this case, reference being thereto had, will fully appear.
I am farther of opinion, that the said seventeen undivided twenty-fourth parts of the said mansion house property, having been dedicated as aforesaid, to the satisfaction of 8500 dollars of the legacy aforesaid, the said seventeen undivided twenty-fourth parts of the said mansion house property, became, thereby, subject to the same uses and trusts as are expressed and declared in the said indenture of the 14th day of May 1822, of and concerning the legacy aforesaid.
I am farther of opinion, that all persons purchasing the said seventeen undivided twenty-fourths of the said mansion house property, and having notice, at the time of their purchase of the same, of the uses and trusts to *519 which they were subject, must be regarded, in a Court of Equity, as still holding the same, subject to the said uses and trusts.
I am farther of opinion, that the title deeds of the appellees, necessarily led them to the knowledge of the situation of the property. The deed to them from John Heth, under which they claim title to the property, refers to the deed from Thomas Green, conveying the property to the said Heth; and this last deed refers to the deed of the 4th of March 1833, from the executors and devisees of George Pickett dec’d, to the said Thomas Green, which clearly shews that the property aforesaid had been dedicated to the payment of Mrs. Heth’s legacy as aforesaid: and then the deed aforesaid of the 14th May 1822, (which, having been recorded according to the requisitions of our registry laws, the appellees were bound to notice, and are presumed to have noticed,) pointed, directly, to the uses and trusts to which the property aforesaid became subject, in consequence of its dedication as aforesaid. The appellees must, therefore, be regarded as purchasers with notice. They can claim no exemption therefrom, on the ground of the allegation in the said deed of the 4th March 1833, namely, that it was “ well understood that the mansion house property shall be conveyed in such manner and to such persou or persons as the said George C. Pickett, and the said Beverly Jleth, as trustee aforesaid, may require and direct.” The said Pickett was not a party to the said deed, as trustee, but only in his own right, and as acting executor, and one of the surviving devisees and legatees in trust, of and under the last will and testament of his father. He had become entitled, in his own right, under the agreement of the 11th of August 1832, and the deed of the 4th of March 1833, to seven undivided twenty-fourth parts of the mansion house property, in payment of 3500 dollars, in part of the debt due to him from his father’s estate: and, by the same *520 deed, the said Beverly Heth, who had been substituted as trustee under the deed of the 14th day of May 1822, in the place of the said George C. Pickett, had become entitled as trustee under that deed, to the remaining seventeen undivided twenty-fourths of the said mansion house property. The clause in the said deed of the 4th of March 1883, containing the allegation aforesaid, had reference to these respective interests; and the true construction thereof is, that the seven undivided twenty-fourths of the mansion house property should be conveyed in such manner and to such person or persons as the said George C. Pickett should require and direct, and that the other seventeen undivided twenty-fourths of the said property should be conveyed in such manner and to such persons as the said Beverly Heth, as trustee, should require or direct. The legal title of all the said property had been vested in the said Thomas Green. He was not to hold it always. He was bound to convey it according to the intents and purposes of the deed of the 4th of March 1833; and the clause in question expresses only what was the manifest intent and meaning of other parts of the said deed, namely, that George C. Pickett was to have the right to control the disposition-of seven undivided twenty-fourths of the mansion house property, and that Beverly Heth, as trustee, was to control and direct the disposition of the residue. George C. Pickett had an unlimited power to dispose of his seven undivided twenty-fourths: but Beverly Heth could direct the disposition of the other seventeen twenty-fourths only as trustee, and according to and for the purposes of the trust reposed in him. If a different intention was secretly entertained by any of the parties to the deed of the 4th of March 1833, whether trustees or others, it was contrary to the rights and interests of the cestuis que trust under that deed; and the execution of such secret and improper intention ought not to be permitted to injure the said cestuis que *521 trust. Admitting that Beverly Heth had been legally substituted as trustee, under the deed of the 14th of May 1822, in the room of George C. Pickett, and that he had the right and power to change the trust subject by substituting other property in its place, to be held by him subject to the same trusts, (points which I do not think it necessary to decide in this case,) yet he had no right to sell the said trust subject to John Heth for his own benefit, without such substitution of other property of equal value. It is true that the deed from Thomas Green to John Heth, does state that such substitution was made; but there is no proof thereof, and it is undoubted that none was in fact made. If, therefore, John Heth were the person against whom the present claim is preferred, it is clear that he would not be permitted to hold the seventeen undivided twenty-fourths of the mansion house property. The persons claiming under John Heth, with notice of the situation of the property, cannot stand, in a Court of Equity and good conscience, on more favoured ground than that which is occupied by the said Heth. Other property could not have been conveyed in trust, in substitution of the original trust subject, without some deed or assignment in writing. The appellees should have called for, such instrument, and should have satisfied themselves of its existence and of its contents. They did not do so, but trusted to a false declaration that such assignment in trust had been made. The consequences of their misplaced confidence ought to fall on them,selves, and not on innocent cestuis que trust.